**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO.

CBS STUDIOS INC.,
a Delaware corporation,

　　　　　Plaintiff,

vs.

MERCHCUSTOM.COM, AN INDIVIDUAL,
BUSINESS ENTITY, OR
UNINCORPORATED ASSOCIATION,

　　　　　Defendant.

_____/

## <u>COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF</u>

Plaintiff, CBS Studios Inc. ("Plaintiff" or "CBS") hereby sues Defendant, Merchcustom.com, an Individual, Business Entity, or Unincorporated Association, also identified in the above caption ("Defendant"). Defendant is promoting, advertising, distributing, offering for sale, and/or selling goods bearing and/or using counterfeits and confusingly similar imitations of CBS's Star Trek trademarks within this district through its Internet based e-commerce store operating under the seller name merchcustom.com (the "E-commerce Store Name"). In support of its claims, CBS alleges as follows:

### <u>JURISDICTION AND VENUE</u>

1.　　This is an action for injunctive relief and damages for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, 1125(a), The All Writs Act, 28 U.S.C §1651(a) and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over CBS's state law claims

because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendant is subject to personal jurisdiction in this district, because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district, through at least the e-commerce store accessible and doing business in Florida and operating under its E-commerce Store Name. Alternatively, based on its overall contacts with the United States, Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant is, upon information and belief, a non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## THE PLAINTIFF

4.      Since 1912, Paramount Pictures Corporation ("Paramount Pictures") has been a leading producer and distributor of feature films and television programming. Prior to the transfer of its television business to CBS in 2005, Paramount Pictures was one of the largest suppliers of motion pictures and television programming for the broadcast, first run syndication and cable markets in the United States. Paramount Pictures' films and television productions were distributed globally.

5.      CBS is successor-in-interest to certain rights of Paramount Pictures, including but not limited to all rights associated with the "Star Trek" television series, all related series and

2

merchandising associated therewith. On December 21, 2005, CBS and Paramount Pictures entered into an agreement whereby the television business of Paramount Pictures (but not its film business) was transferred to CBS, including all assets and intellectual property rights associated with the "Star Trek" television series.

6.      Prior to 2005 for several decades, Paramount Pictures was the producer of many of the top-grossing motion pictures and highest-rated television series and some of the most successful franchises in syndication history. Paramount Pictures' television programming reached a broad segment of the consumer population worldwide and enjoyed exceptional visibility via its own advertising efforts and unsolicited media coverage worldwide. The related intellectual property rights, formerly of Paramount Pictures but now assets of CBS, are valuable commercial assets. Examples of Paramount Pictures', now CBS's successful classic and current television series include "Star Trek" and the related series, "Beverly Hills: 90210," "Blue Bloods," "The Brady Bunch," "Cheers," "Criminal Minds," "Entertainment Tonight," "Frasier," "Family Ties," "Ghost Whisperer," "The Good Wife," "Happy Days," the "Hawaii Five-O" franchise, "Jag," the "MacGyver" franchise, "Medium," "Mission: Impossible" television series, "Numbers," the "NCIS" franchise, "Scorpion," "Taxi," and many others." CBS's rights include trademark and copyrights, distribution and merchandising and subsidiary rights for these titles.

7.      Since December 21, 2005, CBS and its affiliated companies have continued to distribute the television productions it acquired from Paramount Pictures worldwide.

8.      Plaintiff CBS is a Delaware corporation at 1515 Broadway, New York, New York. CBS is, in part, engaged in the worldwide production and distribution of copyrighted entertainment content, including the "Star Trek" franchise. Star Trek is a beloved science fiction television series that first aired September 8, 1966. The show was created by Gene Roddenberry and followed the

3

adventures of the crew of the starship U.S.S. Enterprise as they explored new worlds and civilizations.

9. The original series, often referred to as "The Original Series" or "TOS," aired for three seasons from 1966 to 1969 on NBC. The show followed the crew of the starship USS Enterprise, led by Captain James T. Kirk, as they traveled through space. After running for three seasons, the Original Series was cancelled, but later gained a cult following through reruns and became a franchise with multiple spin-offs and movies.

10. Each series in the Star Trek franchise has had its own set of iconic characters, such as Captain James T. Kirk, Mr. Spock, and Dr. Leonard "Bones" McCoy from the original series, and Captain Jean-Luc Picard, Commander William Riker, and Data from "Star Trek: The Next Generation." Other memorable characters include the shape-shifting security officer Odo and the Ferengi bartender Quark from "Star Trek: Deep Space Nine," and the half-human, half-Klingon chief of security Tuvok and the holographic doctor from "Star Trek: Voyager."

11. In addition to the Original Series, the other works in the Star Trek franchise produced by CBS and its predecessor are the well-known television and multimedia series: "Star Trek: The Animated Series," "Star Trek: The Next Generation," "Star Trek: Deep Space Nine," "Star Trek: Voyager," "Star Trek: Enterprise," "Star Trek: Discovery," "Star Trek: Short Treks," "Star Trek: Picard," "Star Trek: Lower Decks," "Star Trek: Prodigy," "Star Trek: Strange New Worlds" and others (collectively, the "Productions").

12. In addition to the Productions, Paramount Pictures has produced and distributed thirteen feature films in the Star Trek franchise to date:

1. "STAR TREK: THE MOTION PICTURE" (1979);

2. "STAR TREK II: THE WRATH OF KAHN" (1982);

3.    "STAR TREK III: THE SEARCH FOR SPOCK" (1984);

4.    "STAR TREK IV: THE VOYAGE HOME" (1986);

5.    "STAR TREK V: THE FINAL FRONTIER" (1989);

6.    "STAR TREK VI: THE UNDISCOVERED COUNTRY" (1991);

7.    "STAR TREK: GENERATIONS" (1994);

8.    "STAR TREK: FIRST CONTACT" (1996);

9.    "STAR TREK: INSURRECTION" (1998);

10.    "STAR TREK: NEMESIS" (2002);

11.    "STAR TREK" (2009); and

12.    "STAR TREK INTO DARKNESS" (2013)

13.    "STAR TREK BEYOND" (2016)

(collectively, the "Movies").

13.    STAR TREK, the 2009 Movie produced and directed by J.J. Abrams is the 11th installment of the film franchise, and a relaunch as a prequel to the Original Series set in an alternative timeline. The story features the main characters of the Original Series portrayed by a new cast playing younger versions of James T. Kirk played by Chris Pine and Spock played by Zachary Quinto, and the original Spock played by Leonard Nimoy made a cameo. Critics praised the character development as well as the storyline. The Movie became a box office success, grossing over US$385 million worldwide. It was nominated for several awards, including four Academy Awards®, and ultimately winning in the category for Best Makeup, making it the first STAR TREK film to win an Academy Award.

14.    STAR TREK INTO DARKNESS, the 12th installment of the film franchise featured the 2009 cast reprising their roles with Leonard Nimoy making his final film appearance before

5

his death in 2015. The plot takes place one year after the previous installment, with Kirk and the crew of the U.S.S. Enterprise sent to the Klingon home world seeking former Starfleet member-turned-terrorist John Harrison. The Movie was a critical success, and its gross earnings of over US$467 million worldwide made it the highest-grossing entry in the STAR TREK film franchise.

15.   STAR TREK BEYOND, the 13th Movie was released in July 2016 to coincide with and celebrate the 50th anniversary of the STAR TREK franchise.  The Movie has and continues to be a critical success, and its gross earnings of exceed US$343 million worldwide.

16.   The Movies have been viewed by millions of people in movie theatres, on television in almost 200 countries worldwide, as well as on video cassettes, DVDs and related technology and via digital streaming and downloadable formats.  The Movies have collectively grossed more than US$2.5 billion worldwide and have been identified as the #4 movie franchise of all time.  In fact, the last three installments, which appealed to a broader audience of families, women, and teens, catapulted the STAR TREK franchise into the pop culture zeitgeist with positive commentary and global magazine covers.

17.   The enormous fame and widespread popularity of the Star Trek franchise for more than 55 years has resulted in an extensive licensing campaign for a wide variety of merchandise and services related to the characters, starships, and other elements of the franchise including the trademarks, copyrights and trade dress. Fans can purchase a wide range of merchandise, including apparel, hats, jewelry, toys, dolls, figurines, model kits, costumes, pet accessories, bags, housewares, linens, pillows, audio visual products, mobile phone accessories, credit cards, food and beverages, beer and liquor, among many others. The Star Trek franchise has also inspired countless books, comics, manuals, calendars, computer games, video games, game apps and software. Additionally, there have been numerous official conventions hosted worldwide, Star

6

Trek-themed attractions at theme parks, including the Star Trek Experience at the Las Vegas Hilton, travelling exhibits including "Star Trek: The Adventure," which toured Singapore to London in 2002-2003, the worldwide "Star Trek: The Tour" in 2008, museums and musical concert events in 2015-2016.

18. The enormous fan base of Star Trek has spawned clubs and organizations all over the world with thousands of members globally. The Star Trek franchise has had immense popularity both globally and in the United States. The Star Trek franchise has been a major success, with the Productions being among the most-watched shows on TV and the Movies a global box office success. Additionally, the Star Trek franchise has been recognized with numerous awards, including 30 Primetime Emmy Awards. Overall, the Star Trek franchise has had a lasting impact on popular culture and continues to inspire fans all over the world. Its success in merchandising, fan engagement, and global popularity makes it one of the most successful science fiction franchises of all time.

19. Further, CBS is engaged in the business of manufacturing and distributing throughout the world, including within this district, a variety of high-quality Star Trek related goods under multiple world-famous common law and federally registered Star Trek trademarks, including those identified in Paragraph 28 below. CBS through its global licensing program offers for sale and sells its trademarked goods within the State of Florida, including this district and throughout the United States. Defendant, through the sale and offers for sale of counterfeit and infringing Star Trek branded products, is directly and unfairly competing with CBS's economic interests in the United States, including the State of Florida, and causing CBS irreparable harm and damage within this jurisdiction.

20. Like many other famous intellectual property owners in the entertainment industry, CBS suffers ongoing daily and sustained violations of their intellectual property rights at the hands of counterfeiters and infringers, such as Defendant herein, who wrongfully reproduces, copies, and/or counterfeits CBS's Star Trek trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across its e-commerce store.

21. To combat the harm caused by Defendant and others engaging in similar conduct, each year CBS expends significant monetary resources in connection with intellectual property enforcement efforts, including legal fees and investigative fees. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as CBS, to expend significant resources across a wide spectrum of efforts, in order to protect both consumers and itself from confusion and the erosion of the goodwill embodied in CBS's Star Trek brand.

## THE DEFENDANT

22. Defendant is an individual, business entity of unknown makeup, or unincorporated association, who, upon information and belief, either resides and/or operates in a foreign jurisdiction, redistributes products from the same or similar sources in that location, and/or ships its goods from the same or similar sources in that location to consumers. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendant targets its business activities toward consumers throughout the United States, including within this district, through the operation of, at least, the commercial Internet based e-commerce store under the E-commerce Store Name. Defendant also maintains payment accounts to accept, receive, and deposit profits from its trademark counterfeiting and infringing activities connected to its E-commerce Store Name.

23.     Defendant is the past and present controlling force behind the sale of products bearing and/or using counterfeits and infringements of CBS's Star Trek trademarks as described herein.

24.     Defendant directly engages in unfair competition with CBS by advertising, offering for sale, and/or selling goods bearing and/or using counterfeits and infringements of the Star Trek trademarks to consumers within the United States and this district through Internet based e-commerce store using, at least, the E-commerce Store Name, as well as additional e-commerce store or seller identification aliases not yet known to CBS. Defendant has purposefully directed some portion of its unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing Star Trek branded goods into the State.

25.     Defendant has registered, established, or purchased, and maintained its E-commerce Store Name. Defendant may have engaged in fraudulent conduct with respect to the registration or maintenance of the E-commerce Store Name by providing false and/or misleading information during the registration or maintenance process related to its E-commerce Store Name. Defendant has registered and/or maintained its E-commerce Store Name for the sole purpose of engaging in unlawful counterfeiting and infringing activities.

26.     Defendant will likely continue to register or acquire new e-commerce store names or other aliases, and related payment accounts, for the purpose of selling and/or offering for sale goods bearing and/or using counterfeit and confusingly similar imitations of CBS's Star Trek trademarks unless enjoined.

27.     Defendant's E-commerce Store Name, associated payment accounts, and any other alias e-commerce store or seller identification names used in connection with the sale of counterfeit

and infringing goods bearing and/or using CBS's Star Trek trademarks are essential components of Defendant's online activities and are how Defendant furthers its counterfeiting and infringement scheme and causes harm to CBS. Moreover, Defendant is using CBS's famous Star Trek brand name and trademarks to drive Internet consumer traffic to its e-commerce store operating under the E-commerce Store Name, thereby increasing the value of the E-commerce Store Name and decreasing the size and value of CBS's legitimate marketplace and intellectual property rights at CBS's expense.

## COMMON FACTUAL ALLEGATIONS

### CBS's Business and Trademark Rights

28. CBS is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (collectively the "Star Trek Marks"):

| Trademark | Registration Number | Registration Date | Class(es)/Good(s) |
|---|---|---|---|
| **STAR TREK** | 1,098,210 | August 1, 1978 | IC 025: CAPS, COSTUMES, HATS, JACKETS, SHIRTS |
| | 1,464,519 | November 10, 1987 | IC 014: LAPEL PINS<br><br>IC 025: CLOTHING; NAMELY, SHIRTS, SWEATSHIRTS, JACKETS AND PANTS |
| | 4,941,456 | April 19, 2016 | IC 025: Clothing, namely, t-shirts, sweatshirts, jackets, caps, bathing suits, bathrobes, shorts, coats, socks, footwear, bandanas, sweaters, Halloween costumes, masquerade costumes, dresses, neck wear, pajamas, pants, shirts, underwear, scarves, neckties, hats, slippers, sleepwear, head wear, boxer shorts |

The Star Trek Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration

for the Star Trek Marks are attached hereto as Composite Exhibit "1."

29.     The Star Trek Marks have been used in interstate commerce to identify and distinguish CBS's high-quality Star Trek goods for more than five decades.

30.     The Star Trek Marks have been used by CBS in commerce long prior in time to Defendant's use of copies of those Marks. The Star Trek Marks have never been assigned or licensed to the Defendant in this matter.

31.     The Star Trek Marks are symbols of CBS's quality, reputation and goodwill and have never been abandoned. CBS has carefully monitored and policed the use of the Star Trek Marks.

32.     The Star Trek Marks are well known and famous and have been for many years. CBS expends substantial resources developing, advertising and otherwise promoting the Star Trek Marks. The Star Trek Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

33.     Further, CBS extensively uses, advertises, and promotes the Star Trek Marks in the United States in association with the sale of high-quality goods. CBS has expended enormous resources promoting the Star Trek Marks and products bearing such trademarks. In recent years, annual sales of products bearing the Star Trek Marks have totaled in the many millions of dollars within the United States.

34.     As a result of CBS's efforts, members of the consuming public readily identify merchandise bearing or sold under the Star Trek Marks as being high-quality goods sponsored and approved by CBS.

35.     Accordingly, the Star Trek Marks have achieved secondary meaning among consumers as identifiers of high-quality goods.

36.     Genuine goods bearing the Star Trek Marks are widely legitimately advertised and promoted by CBS, its authorized distributors, and unrelated third parties via the Internet. Visibility on the Internet, particularly via Internet search engines and social media platforms is important to CBS's overall marketing and consumer education efforts. Thus, CBS expends significant monetary resources on Internet marketing and consumer education regarding its products, including search engine optimization strategies, search engine marketing and social media strategies. Those strategies allow CBS and its authorized retailers to fairly and legitimately educate consumers about the value associated with the Star Trek brand and the goods sold thereunder, and the problems associated with the counterfeiting of CBS's Star Trek Marks.

**Defendant's Infringing Activities**

37.     Defendant is promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of the Star Trek Marks (the "Counterfeit Goods") through at least the e-commerce store operating under the E-commerce Store Name. Specifically, Defendant is using the Star Trek Marks to initially attract online consumers and drive them to Defendant's e-commerce store operating under the E-commerce Store Name. Defendant is using identical copies of the Star Trek Marks for different quality goods. CBS has used the Star Trek Marks extensively and continuously before Defendant began offering counterfeit and confusingly similar imitations of CBS's Star Trek merchandise.

38.     Defendant's Counterfeit Goods are of a quality substantially different than that of CBS's genuine Star Trek goods. Defendant is actively using, promoting and otherwise advertising, distributing, selling and/or offering for sale substantial quantities of its Counterfeit Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality Star Trek

12

goods offered for sale by CBS, despite Defendant's knowledge that it is without authority to use the Star Trek Marks. Defendant's actions are likely to cause confusion of consumers at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendant's goods offered for sale in or through Defendant's e-commerce store are genuine Star Trek goods originating from, associated with, and approved by CBS.

39.     Defendant advertises its e-commerce store, including its Counterfeit Goods offered for sale, to the consuming public using, at least, the E-commerce Store Name. In so doing, Defendant improperly and unlawfully uses the Star Trek Marks without CBS's permission.

40.     Defendant is, upon information and belief, employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of the Star Trek Marks. Specifically, Defendant is using counterfeits and infringements of Star Trek's famous name and the Star Trek Marks to make its e-commerce store selling unauthorized goods appear more relevant and attractive to consumers searching for both Star Trek and non-Star Trek goods and information online. Defendant is causing harm to CBS and the consuming public by (i) depriving CBS and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of CBS's genuine Star Trek goods on the Internet, (ii) causing an overall degradation of the value of the goodwill associated with the Star Trek Marks by viewing inferior products in either the pre or post sale setting, and/or (iii) increasing CBS's overall cost to market its Star Trek goods and educate consumers about the Star Trek brand via the Internet.

41.     Defendant is conducting and targeting its counterfeiting and infringing activities toward consumers and causing harm within this district and elsewhere throughout the United

States. As a result, Defendant is defrauding CBS and the consuming public for Defendant's own benefit.

42.     At all times relevant hereto, Defendant has had full knowledge of CBS's ownership of the Star Trek Marks, including its exclusive right to use and license such trademarks and the goodwill associated therewith.

43.     Defendant's use of the Star Trek Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of its Counterfeit Goods, is without CBS's consent or authorization.

44.     Defendant is engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to CBS's rights for the purpose of trading on CBS's goodwill and reputation. If Defendant's intentional counterfeiting and infringing activities are not permanently enjoined by this Court, CBS and the consuming public will continue to be harmed.

45.     Defendant's above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendant's wrongful conduct is likely to create a false impression and deceive customers, the public, and the trade into believing there is a connection or association between CBS's genuine Star Trek goods and Defendant's Counterfeit Goods, which there is not.

46.     Defendant's payment and financial accounts are being used by Defendant to accept, receive, and deposit profits from Defendant's trademark counterfeiting and infringing of the Star Trek Marks and unfairly competitive activities connected to its E-commerce Store Name, and any other alias e-commerce store names it uses and/or controls.

47. Further, Defendant is, upon information and belief, likely to transfer or secret its assets to avoid payment of any monetary judgment awarded to CBS.

48. CBS has no adequate remedy at law.

49. CBS is suffering irreparable injury and has suffered substantial damages because of Defendant's unauthorized and wrongful use of the Star Trek Marks. If Defendant's intentional counterfeiting and infringing, and unfairly competitive activities are not permanently enjoined by this Court, CBS and the consuming public will continue to be harmed while Defendant wrongfully earn a substantial profit.

50. The harm and damages sustained by CBS has been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its Counterfeit Goods.

## COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

51. CBS hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 50 above.

52. This is an action for trademark counterfeiting and infringement against Defendant based on its use of counterfeit and confusingly similar imitations of the Star Trek Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale and sale of the Counterfeit Goods.

53. Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of the Star Trek Marks. Defendant is continuously infringing and inducing others to infringe the Star Trek Marks by using the Star Trek Marks to advertise, promote, sell, and offer to sell counterfeit and infringing Star Trek branded goods.

54. Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Counterfeit Goods.

55. Defendant's unlawful actions have caused and are continuing to cause unquantifiable damages and irreparable harm to CBS and are unjustly enriching Defendant with profits at CBS's expense.

56. Defendant's above-described unlawful actions constitute counterfeiting and infringement of the Star Trek Marks in violation of CBS's rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

57. CBS has no adequate remedy at law. CBS has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

58. CBS hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 50 above.

59. Defendant's Counterfeit Goods bearing, offered for sale and sold using copies of the Star Trek Marks have been widely advertised and offered for sale throughout the United States via the Internet.

60. Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of the Star Trek Marks are virtually identical in appearance to CBS's genuine goods bearing the Star Trek Marks. However, Defendant's Counterfeit Goods are different in quality. Accordingly, Defendant's activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of its Counterfeit Goods.

16

61.     Defendant has used in connection with its advertisement, offer for sale, and sale of its Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which tend to falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to CBS's detriment.

62.     Defendant has authorized infringing uses of the Star Trek Marks in Defendant's advertisement and promotion of its counterfeit and infringing branded goods.

63.     Additionally, Defendant is using counterfeits and infringements of the Star Trek Marks to unfairly compete with CBS and others for space within organic and paid search engine and social media results. Defendant is thereby (i) depriving CBS of a valuable marketing and educational space online which would otherwise be available to CBS and (ii) reducing the visibility of CBS's genuine Star Trek goods on the World Wide Web and across social media platforms.

64.     Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

65.     CBS has no adequate remedy at law and has sustained injury and damages caused by Defendant's conduct. Absent an entry of an injunction by this Court, CBS will continue to suffer irreparable injury to its goodwill and business reputation, as well as monetary damages, while Defendant is unjustly profiting.

## COUNT III - COMMON LAW UNFAIR COMPETITION

66.     CBS hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 50 above.

67. This is an action against Defendant based on its promotion, advertisement, distribution, sale and/or offering for sale of goods bearing and/or using marks that are virtually identical to one or more of the Star Trek Marks in violation of Florida's common law of unfair competition.

68. Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale and distributing goods using and/or bearing counterfeits and infringements of one or more of the Star Trek Marks. Defendant is also using counterfeits and infringements of the Star Trek Marks to unfairly compete with CBS and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

69. Defendant's infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendant's e-commerce store as a whole and all products sold therein by its use of the Star Trek Marks.

70. CBS has no adequate remedy at law. CBS has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

### COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT

71. CBS hereby adopts and re-alleges the allegations set forth in Paragraphs 1 through 50 above.

72. CBS is the owner of all common law rights in and to the Star Trek Marks.

73. This is an action for common law trademark infringement against Defendant based on its promotion, advertisement, offering for sale, and sale of its Counterfeit Goods using one or more of the Star Trek Marks.

74. Specifically, Defendant is promoting, and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of one or more of the Star Trek Marks.

75. Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's Goods bearing and/or using the Star Trek Marks.

76. CBS has no adequate remedy at law. CBS has suffered and will continue to suffer irreparable injury and damages while Defendant is unjustly profiting due to its above-described activities if Defendant is not permanently enjoined.

## PRAYER FOR RELIEF

77. WHEREFORE, Plaintiff, CBS Studios Inc., demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a. Entry of a permanent injunction pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell its Counterfeit Goods; from infringing, counterfeiting, or diluting the Star Trek Marks; from using the Star Trek Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with CBS; from falsely representing itself as being connected with CBS, through sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of

the purchasing public to believe any goods or services of Defendant, are in any way endorsed by, approved by, and/or associated with CBS; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Star Trek Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods as being those of CBS, or in any way endorsed by CBS and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of CBS's names or trademarks, including those associated with the Star Trek franchise, and from otherwise unfairly competing with CBS.

b.　　Entry of a permanent injunction pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendant in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of the Star Trek Marks.

c.　　Entry of an order pursuant to 28 U.S.C. § 1651(a) The All Writs Act, and the Court's inherent authority that upon CBS's request, those acting in concert or participation as service providers to Defendant, who have notice of the injunction, disable and/or cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-Commerce Store Name, through which Defendant engages in the promotion, offering for sale and/or sale of goods using counterfeits and/or infringements of the Star Trek Marks.

d.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon CBS's request, any Internet marketplace website operators, administrators, registrars, and/or top level domain (TLD) Registries for the E-commerce Store Name and any other alias e-commerce store names being used by Defendant who are provided with notice of an injunction issued by the Court, identify any e-mail address known to be associated with Defendant's E-commerce Store Name.

e.       Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, that upon CBS's request, Defendant and the top level domain (TLD) Registry for the E-commerce Store Name, or their administrators, including backend registry operators or administrators, place the E-commerce Store Name, and any other e-commerce store names being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of the Star Trek Marks, on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files which link the E-commerce Store Name, and any other e-commerce store names used by Defendant, to the IP addresses where the associated e-commerce stores are hosted.

f.       Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, canceling for the life of the current registration or, at CBS's election, transferring the E-commerce Store Name and any other e-commerce store names used by Defendant to engage in its counterfeiting of the Star Trek Marks to CBS's control so they may no longer be used for unlawful purposes.

g.       Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to assign all rights, title, and interest, to

21

its E-commerce Store Name and any other e-commerce store names used by Defendant, to CBS and, if within five (5) days of entry of such order Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to instruct in writing, all search engines to permanently delist or deindex the E-commerce Store Name and any other e-commerce store names used by Defendant, and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing CBS to request any Internet search engines or service providers referring or linking users to any Uniform Resource Locator ("URL") of the E-commerce Store Name, which are provided with notice of the order, to permanently disable, de-index, or delist all URLs of the E-commerce Store Name and/or permanently disable the references or links to all URLs of the E-commerce Store Name used by Defendant to promote, offer for sale, and/or sell goods bearing and/or using counterfeits and/or infringements of the Star Trek Marks, based upon Defendant's unlawful activities being conducted via the E-commerce Store Name as a whole and via any specific URLs identified by CBS.

j.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s), to instruct in writing, the Registrar(s) for the E-commerce Store Name to permanently close the registration account(s) in which the E-

commerce Store Name is located and, if within five (5) days of entry of such an order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing CBS to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses which are or have been used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits, and/or infringements of the Star Trek Marks.

l.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing CBS to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Name to disclose to CBS the true identities and contact information for the registrant(s) of the E-commerce Store Name.

m.      Entry of an order requiring, upon CBS's request, Defendant to request in writing permanent termination of any messaging services, usernames, e-commerce store names, and social media accounts it owns, operates, or controls on any messaging service, and any e-commerce marketplace, or social media platform.

n.      Entry of an order requiring Defendant to account to and pay CBS for all profits and damages resulting from Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the award to CBS be trebled, as provided for under 15 U.S.C. §1117, or that CBS be awarded statutory damages from Defendant in the amount of two

million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

o. Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of CBS's costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

p. Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon CBS's request, Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify, restrain and be required to surrender to  CBS all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Name, or other alias e-commerce store names used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to CBS in partial satisfaction of the monetary judgment entered herein.

q. Entry of an award of pre-judgment interest on the judgment amount.

r. Entry of an order requiring Defendant, at CBS's request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived concerning the nature, characteristics, or qualities of Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public

s. Entry of an order for any further relief as the Court may deem just and proper.

DATED: May 6, 2026.

Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By: **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
Mallory R. Denzl (Fla. Bar No. 1050351)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: MalloryR@smgpa.cloud

Attorneys for Plaintiff, CBS Studios Inc.